UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>v.<br><br>LINDA ROOS,<br><br>    Defendant. | Criminal No. 12-09-2-ART<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Dr. Linda Roos has moved to suppress the evidence seized during a search of her office. R. 124. She argues that the search warrant was invalid because: (1) it authorized a search of the files of all her Kentucky patients without probable cause to believe that those files contained evidence of a crime, and (2) it lacked particularity. Her first argument fails because even if the warrant lacked probable cause—which is debatable—the good-faith exception for searches conducted pursuant to warrants applies. Her second argument fails because the warrant was specific enough to provide officers with guidance about which records to seize.

## BACKGROUND

This Court referred Dr. Roos's motion to suppress to Magistrate Judge Hanly Ingram for a report and recommendation. R. 57-1 at 9. Judge Ingram recommended that this Court deny the motion. R. 153. Dr. Roos objected to that recommendation, R. 160, so this Court reviews the recommendation de novo. *See* Fed. R. Crim. P. 59(b)(3); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) (citation omitted).

Because Judge Ingram's report and recommendation concisely lays out the relevant facts, only a brief summary is necessary here. *See* R. 153 at 1–6. The Kentucky State Police ("KSP") came to believe that Dennis and Helen Varney were unlawfully distributing prescription painkillers. R. 124-1 at 7 ¶¶ 9–10. KSP searched the Varney residence pursuant to a state search warrant. At the house they found oxycodone prescribed by Dr. Roos and reminders for appointments with Dr. Roos, a doctor in Houston, Texas. *Id.* at 7–10. Based on information gained from the searches, Officer Virgil Ray, an FBI Task Force Officer, believed the Varneys were involved in a conspiracy to distribute controlled substances. *Id.*

Officer Ray decided to investigate Dr. Roos's role in that conspiracy. He interviewed three individuals who took trips to Houston to get oxycodone prescriptions from Dr. Roos: Joseph Casey, Eddie West, and Dennis Varney. *Id.* at 11–12, 14. All three stated that they would travel to Houston, see Dr. Roos, be examined quickly, and then receive prescriptions for large amounts of oxycodone and other painkillers. *Id.* at 11–17. They also said that Dr. Roos required in-person examinations every other month. In the other months she would call in the Texas prescriptions to a Kentucky pharmacy. *Id.*

Based on this information, Officer Ray applied for a warrant to search Dr. Roos's office for "patient files for patients who have indicated they are from Kentucky" and other records relating to Kentucky patients. *Id.* at 22. Officer Ray executed the search warrant in early 2012, and later that year Dr. Roos was charged with conspiring to distribute controlled substances and launder money. R. 1; R. 16.

# DISCUSSION

## I. Even If the Warrant Lacked Probable Cause, Suppression Is Not Warranted Because the Good Faith Exception Applies.

Roos argues that there was not probable cause to search for all of her Kentucky patient files. In her view, the search warrant application did not show that she prescribed medically unnecessary prescriptions to any Kentucky patients other than the six people named in the application. *See* R. 124 at 6 (stating that "the evidence was related to" the named patients so "no nexus was established to all Kentucky patient files"); R. 160 at 3 (same).

Probable cause requires "'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). A reviewing court gives the issuing magistrate's probable cause determination "great deference" and reverses that determination only if it was arbitrary. *United States v. Leake*, 998 F.2d 1359, 1363 (6th Cir. 1993) (quotation omitted). If a common-sense review of the search warrant application shows that the issuing magistrate had a substantial basis to find probable cause, the Court will uphold the warrant. *See United States v. Smith*, 510 F.3d 641, 652 (6th Cir. 2007).

Whether the issuing magistrate reasonably determined that there was probable cause to search all of Dr. Roos's Kentucky patient files is a close question. The affidavit attached to the warrant application identified six patients of Dr. Roos who lived in Kentucky and received medically unnecessary prescriptions: Dennis Varney, Helen Varney, Joseph Casey, Eddie West, Michelle West, and Scott Hawkins. *See* 124-1 at 11, 12, 14, 17. But the warrant authorized a search for the files of all of Dr. Roos's patients who lived in Kentucky,

3

not just those six patients. So the question is whether the issuing magistrate had a substantial basis to conclude that Dr. Roos had other patients—beyond the six named in the affidavit—who lived in Kentucky and received medically unnecessary prescriptions. He might have. The affidavit indicates that Casey and the Varneys heard about Dr. Roos from Eddie West, who in turn heard about Dr. Roos from Hawkins. *See id.* The affidavit does not state how Hawkins found out about Dr. Roos. The issuing magistrate could have reasoned that Hawkins heard about Dr. Roos the same way that the others did: from another one of Dr. Roos's Kentucky patients. Once the issuing magistrate concluded that Dr. Roos likely had another Kentucky patient, he clearly could have concluded that the patient probably received medically unnecessary prescriptions. The affidavit explained that, in Officer Ray's experience, Dr. Roos's practices were characteristic of a "pill mill." *Id.* at 11–17. A "pill mill" is a clinic where the doctor issues medically unnecessary prescriptions and is willfully blind to the potential for drug abuse or trafficking. *Id.* at 18–20. A clinic with patients who travel long distances to obtain prescriptions is usually a pill mill because those patients generally cannot recoup their travel costs without selling some of the prescribed drugs. *See id.* In light of the "great deference" this Court affords the issuing magistrate's probable cause determination, a finding of probable cause based on these facts is not "arbitrary." *United States v. Williams*, 544 F.3d 683, 685 (6th Cir. 2008). But even if were, the suppression would not be warranted because the good-faith exception for searches conducted pursuant to warrants applies.

The good-faith exception allows the admission of evidence that was "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Leon*, 468 U.S. 897, 905 (1984) (quotation omitted). The rationale behind

4

the good-faith exception is simple. The purpose of suppression is to protect Fourth Amendment rights by deterring Fourth Amendment violations. *See id.* at 906. An officer who conducts a search in reasonable reliance on a warrant that is later found to be invalid has done nothing wrong. *See id.* at 919. Thus, the deterrent effect of suppression is unnecessary. *See id.* at 918–21.

Roos invokes one of the exceptions to the good-faith exception, but that exception does not apply to this case. Suppression remains available as a remedy if a warrant was "so facially deficient" that no reasonable officer could have thought that it was valid. *Leon*, 468 U.S. at 923 (describing the fourth exception to the good-faith exception). Roos argues that this warrant was facially deficient because it gave officers a blank check to "rummage" through her office in order to find records of Kentucky patients. *See* R. 149 at 4–6; R. 160 at 4. Replace the word "rummage" with its synonym "search" and the flaw in Roos's argument becomes clear. A search warrant by definition authorizes a search, not a tactical extraction carried out with military precision. A warrant is not facially invalid because an officer might encounter some items not covered by the warrant in the process of looking for items listed in the warrant. *See Andresen v. Maryland*, 427 U.S. 463, 482 n.11 (1976) ("In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized."). Nor is a warrant facially invalid if it affords the officer executing the warrant some discretion to decide how to carry out the search. *See United States v. Richards*, 659 F.3d 527, 538 (6th Cir. 2011) ("[I]t is folly for a search warrant to attempt to structure the mechanics of the search . . . ." (quotation omitted)). Roos simply offers no reason why this run-of-the-mill warrant contains "a glaring deficiency that any reasonable police officer would have known

was constitutionally fatal." *Groh v. Ramirez*, 540 U.S. 551, 564 (2004). Because the warrant was not facially deficient, the good-faith exception applies, and suppression is not warranted.

Roos also suggests that the warrant lacked probable cause because the search warrant application did not establish that her whole medical practice was fraudulent. *See* R. 124 at 6; R. 160 at 3. She is wrong. In making this argument, Roos relies on a series of cases dealing with completely fraudulent businesses, but those cases do not apply to the search warrant at issue here. *See, e.g.*, R. 124 at 4 (citing *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 705 (9th Cir. 2009) (applying "the 'permeated with fraud' exception to the specificity requirements of the warrant")). Several courts have upheld warrants authorizing a search for all of a suspect's files where there was probable cause to believe the suspect's business is "permeated with fraud." *United States v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999) (quotation omitted) (citing cases from five circuit courts). Those cases dealt with extremely broad search warrants that authorized the search and seizure of, in effect, all of a business's records. *See, e.g.*, *Ford*, 184 F.3d at 576 (quoting a warrant). When a search warrant authorizes a search for all of a business's records, the requirement of probable cause to believe that the whole business is fraudulent makes sense. That requirement eliminates the risk that records "not shown to be related to the suspected crime" will be searched for and seized. *Ford*, 184 F.3d at 576. In Roos's case, the search warrant was cabined to a specific set of files—those of patients from Kentucky—that were related to a specific suspected crime—the distribution of controlled substances. Because the search warrant had a narrow scope, the concern that the "permeated with fraud" line of cases were designed to eliminate is not present, and those cases do not apply.

6

## II. The Search Warrant Complied With the Particularity Requirement of the Fourth Amendment.

Roos's final objection is that the warrant lacked particularity. Search warrants must "particularly describ[e] the place to be searched, and the . . . things to be seized." U.S. CONST. amend. IV. The particularity requirement ensures that the warrant contains "enough information to guide and control the agent's judgment in selecting what to take." *Richards*, 659 F.3d at 537. The requirement also prevents warrants that are "too broad in the sense that [they include] items that should not be seized." *Id.* (quotation omitted).

Although Dr. Roos argues otherwise, this warrant provided officers with enough guidance about how to conduct the search of her office and the seizure of listed files. As Judge Ingram explained, the warrant provided officers with clear guidance about which records to seize. R. 153 at 7, 9. All an officer had to do was open a patient file and scan it to determine whether the patient was from Kentucky. If the patient was from Kentucky, the officer could seize the file. If the patient was not from Kentucky, the officer could not seize the file. Dr. Roos argues that to provide the proper amount of guidance, the search warrant should have been limited to only those files of the patients named in Officer Ray's affidavit. R. 160 at 2. But an officer looking for those specific files would go through the same process as an officer looking for Kentucky patient files. He would open the file, look at the patient's name, seize the file if the patient's name matches a patient listed in the warrant, and leave the file if the patient's name does not. The amount of guidance is exactly the same, only the object of the search is different. As it turns out, the object of the search is Dr. Roos's real issue. *See* R. 160 at 2 (mischaracterizing Officer Ray's investigation as one into only the named patients and describing the Kentucky patient records as outside the scope of

that investigation); R. 124 at 5–6 (same). Dr. Roos's particularity argument is really a continuation of her probable cause argument masked as a particularity challenge. Because her probable cause argument failed, this particularity argument fails as well.

Finally, Roos argues that the warrant violated the particularity requirement because it authorized a search for all of her Kentucky patient files, rather than files from within a certain date range. The "[f]ailure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad." *Ford*, 184 F.3d at 576. But, as Judge Ingram explained, the lack of a date range in the warrant did not violate the particularity requirement because Officer Ray could not have specified one. *See United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006) (holding that the failure to include a date range did violate the particularity requirement when "law enforcement knew that the evidence in support of probable cause in the affidavit revolved only around a three-month period"); *United States v. Sissler*, 966 F.2d 1455, *7 (6th Cir. 1992) (unpublished table decision) ("The absence of a time limitation does not make a warrant overbroad if the magistrate is unable to specify an appropriate time frame."). Officer Ray learned about Dr. Roos from Eddie West sometime between August and November 2011. The affidavit does not identify the dates on which Officer Ray interviewed West; however, the dates of the surrounding steps of the investigation indicate that the West interview occurred during that time frame. *See* R. 124-1 at 11, 15. The interview revealed that West found out about Dr. Roos from his friend Scott Hawkins in 2004. R. 124-1 at 12. Hawkins passed away in 2009, so Officer Ray could not have interviewed him and asked when he began seeing Dr. Roos. *Id.* Officer Ray knew that Dr. Roos had seen Kentucky patients since at least 2004, but he

had no way of pinning down the date she started seeing Kentucky patients. Thus, the lack of a date range in the warrant did not violate the particularity requirement.

## CONCLUSION

Accordingly, the Court **OVERRULES** the defendant's objections, R. 160, and **ADOPTS** and **ACCEPTS** Magistrate Judge Hanly Ingram's recommendation, R. 153, denying Dr. Roos's motion to suppress, R. 124.

This the 18th day of March, 2013.

Signed By:
*Amul R. Thapar* AT
United States District Judge